IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PAIGE ALDRIDGE,    3:12-cv-00326- RE

Plaintiff,    **OPINION AND ORDER**

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

Defendant.

**REDDEN**, Judge:

Plaintiff Paige Aldridge ("Aldridge") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed .

1 - OPINION AND ORDER

## BACKGROUND

Aldridge filed her applications for SSI and DIB on August 1, 2007, alleging disability since January 1, 2001, due to back pain and carpal tunnel syndrome. Aldridge was 36 years old on her alleged onset date. She completed high school. Her application was denied initially and upon reconsideration. A hearing was held on March 18, 2011. The Administrative Law Judge ("ALJ") found her not disabled. Aldridge's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Aldridge had the medically determinable severe impairments of lumbar spine degenerative disc disease, carpal tunnel syndrome ("CTS"), cognitive disorder, depressive disorder, anxiety disorder, and pain disorder. Tr. 12.

The ALJ found that Aldridge's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 13.

The ALJ determined Aldridge retained the residual functional capacity ("RFC") to perform light work, sitting for no more than six hours in an eight hour day, and walking and standing for six hours in an eight hour day. She is able to lift or carry up to 20 pounds occasionally and 10 pounds frequently; she is able to push, pull, and operate foot controls within these weight limits; she is unable to climb ropes, ladders, or scaffolding; she is able to climb ramps/stairs, stoop, crouch, and crawl occasionally; she is able to balance and kneel frequently; and she must avoid concentrated exposure to hazards and vibrations. She has the mental capacity to understand, remember, and carry out simple 1-2 step instructions required by jobs classified at a SVP level of 1-2 or unskilled work. She has an average ability to perform and sustain work

activities; she is able to make judgments on simple work-related decisions respond appropriately to supervision and co-workers, and deal with changes within a stable work environment. She is able to have incidental contact with the general public and work in a setting where one-on-one contact is not precluded. She cannot deal with the general public. Tr. 14.

The ALJ found Aldridge could not perform her past relevant work as a hotel clerk, but was capable of working as a housekeeper/cleaner, small products assembler, or bakery worker on conveyor line. Tr. 19.

Aldridge argues that the ALJ erred by: (1) finding her not fully credible; (2) finding that she did not meet or medically equal a Listing; and (3) improperly weighing the medical evidence.

## DISCUSSION

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific

to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an under-lying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found Plaintiff not credible to the extent that her allegations exceed the RFC. Tr. 15. The ALJ noted Aldridge's testimony that she cannot work because she just "can't make it." Tr. 14. The ALJ cited Aldridge's testimony that she has daily panic attacks, showers once a week, and does not prepare meals or do laundry, and "does not even get a bowl of cereal for her granddaughter." Tr. 14-15. Aldridge testified that she is scared to leave her home, she last shopped alone four to five years ago, and last read a book in the 1990s. Aldridge testified that she stays in her room mostly.

The ALJ noted that Aldridge reported caring for her two year old granddaughter. Tr. 15, 438. The ALJ cited records of treating physician Daniel Garcia, M.D., who fired Plaintiff from

4 - OPINION AND ORDER

his practice because lab results showed no opiates in Plaintiff's blood, even though they were prescribed and should have been taken daily. Tr. 305. Dr. Garcia concluded Aldridge was either not following his directions "or the medication is being used for other uses." *Id.*

The ALJ cited the records of Jonathan Fish, M.D. Tr. 15, 246-48. Dr. Fish noted that he did not understand "why such inconspicuous MRI findings [could] lead to so much pain," and noted that Plaintiff's assertion of love for her Post Office job walking five hours a day "just does not compute" with her complaints of back pain. In July 2002, Dr. Fish wrote he could find no objective findings for Plaintiff's pain, and that her case should be closed and "we need to stop giving her pain pills." Tr. 246.

The ALJ cited the Complex Psychological Evaluation completed by Carl C. Epp, Ph.D., in December 2008. Tr. 390-400. Dr. Epp found Plaintiff "very resistant to providing a good faith substance abuse history." Tr. 392. Dr. Epp thought Plaintiff "is almost certainly not practicing full disclosure with respect to her substance abuse history." Tr. 395. Plaintiff would not or could not respond to the question of why she is unable to work. Tr. 390. Dr. Epp noted several discrepancies, and stated he could not "rule out the possibility that she has been 'coached' by someone as to how to present in psychological evaluation." Tr. 400. Dr. Epp noted "this claimant's presentation could suggest either that she is stoned or that she has low intellectual ability. At this point in time either impression could be correct." Tr. 394.

The ALJ noted there is no evidence that Aldridge sought treatment for her back pain after July 2008. Counsel argues that lack of insurance may have contributed to this, but cites no evidence.

The ALJ properly identified clear and convincing reasons to find Aldridge less than fully credible.

## II. The Listings

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

/ / /

/ / /

6 - OPINION AND ORDER

The Listing provides:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in Pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ found that Aldridge's impairments did not meet or equal in severity a Listed impairment. Tr. 13.

Plaintiff contends that her condition meets or equals the severity of the Listing, citing the March 2005 report of Michael Lawrence, M.D. Tr. 255-58. Dr. Lawrence examined Plaintiff and reviewed an MRI of the lumbar spine, which he said "shows evidence of marked disk space narrowing at L5-S1. There is a posterior disk bulge associated with this that extends more into the left L-5 neural foramen than the right. Significant compromises of the neural foramen is present." Tr. 257. On examination, Dr. Lawrence found "no clear-cut femoral nerve tenderness was noted." *Id.* Plaintiff's range of motion was limited in flexion and extension, and straight leg raising maneuver was positive.

Dr. Lawrence did not find compression of a nerve root, motor loss, or sensory or reflex loss. There is no evidence of spinal archnoiditis, or lumbar spinal stenosis. Muneer Desai, M.D., interpreted a May 2004 MRI as showing abutment of nerve roots by a disc bulge. He did not find, nor did any other physician, that nerve roots were compressed. Tr. 253. Herman Wu, M.D., found a May 2005 MRI showed no evidence of nerve root impingement and no significant interval change in comparison to the May 2004 images. Tr. 272. The ALJ did not err by finding Plaintiff's condition did not meet or equal in severity a Listed impairment.

### III. Medical Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate

8 - OPINION AND ORDER

reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff contends the ALJ erred by rejecting the opinion of Silverio Arenas, Jr., Ph.D. Tr. 278-83. Dr. Arenas conducted a psychological evaluation of Plaintiff in May 2008, and noted:

> Mental status examination noted mild-to-significant problems in the areas of attitude/behavior, affect/mood, thought flow, recent memory, knowledge fund attention/concentration, and in judgment with other aspects being normal. The Burns scales suggested a severe level of depression and an extreme level of anxiety with related symptoms. Overall, the client's abilities to reason and understand, attend/concentrate, remember, pace, persist, and to tolerate/manage stress are all adequately functional relative to the presenting problems, within her present limited/curtailed and isolative interactive environment, but would be highly dysfunctional outside of that, as in any competitive work situation.

Tr. 282-83.

The ALJ rejected Dr. Arenas's opinion regarding Plaintiff's ability to function in a work situation. Tr. 17. The ALJ noted Dr. Arenas "appears to base a part of his opinion on her statements, and her lack of credibility undermines the reliability of it." *Id.* This is a valid reason for the ALJ to reject an opinion. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999), *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ did not err in rejecting a physician's opinion when it is based on a claimant's subjective report and the ALJ has properly determined that the claimant is not a reliable source. *Id.*

/ / /

/ / /

9 - OPINION AND ORDER

## CONCLUSION

For these reasons, the ALJ's decision that Aldridge is not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 23 day of August, 2013.

JAMES A. REDDEN
United States District Judge